<div style="border:1px solid">

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3212-17T3

MARIE ELLEN WEAVER,

     Plaintiff- Respondent,

v.

JOSEPH R. YOVANOVITCH,

     Defendant-Appellant.

_____

          Argued July 9, 2019 - Decided September 30, 3029

          Before Judges Nugent and Accurso.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1012-13.

          Amy Sara Cores argued the cause for appellant (Cores & Associates, LLC, attorneys; Amy Sara Cores and Marybeth Hershkowitz; on the briefs).

          David W. Trombadore argued the cause for respondent (Lawrence W. Luttrell, PC, attorneys; David W. Trombadore, of counsel and on the brief).

PER CURIAM

Defendant Joseph R. Yovanovitch appeals from a February 8, 2018 order denying his request to change the permanent alimony he agreed to pay plaintiff Marie Ellen Weaver in their 2013 marital settlement agreement to limited duration alimony no longer than the length of their seventeen-and-a-half-year marriage in accordance with the alimony provision of their agreement and the 2014 amendments to the alimony statute, specifically, N.J.S.A. 2A:34-23(b). Judge Butehorn denied the motion, finding neither the marital settlement agreement nor the 2014 amendments to the alimony statute provided defendant grounds for relief. We agree and affirm.

The alimony provision in the parties' marital settlement agreement provides in pertinent part:

> 2. Husband shall pay to the Wife for her support and maintenance the sum of forty-eight thousand dollars ($48,000.00) per year every year until the death of the Wife, death of the Husband, remarriage of the Wife, or the Husband obtaining an age where he is entitled to full retirement benefits under social security, whichever event shall first occur. Alimony shall be subject to modification or termination upon the cohabitation of the Wife, said cohabitation shall constitute a prima facie change in circumstances, and shall be defined pursuant to Garlinger and Gayet.[1] Alimony is based on the following assumptions:

---

[1] Garlinger v. Garlinger, 137 N.J. Super. 56 (App. Div. 1975); Gayet v. Gayet, 92 N.J. 149 (1983).

A. The Wife being imputed gross annual income of ten thousand dollars ($10,000.00);

B. The Husband currently earns one hundred forty-five thousand dollars ($145,000.00).

. . . .

Both parties make this agreement with the knowledge that there is a proposed change to the alimony statute which could substantially impact the terms contained herein. In the event that the law changes then both parties reserve all rights to seek a review of this alimony provision as provided for under the terms of the new law.

Defendant argued the language of the agreement made the 2014 amendments to the alimony statute applicable notwithstanding the Legislature's express statement that the law "shall not be construed either to modify the duration of alimony ordered or agreed upon or other specifically bargained for contractual provisions that have been incorporated into: a. a final judgment of divorce or dissolution; . . . or c. any enforceable written agreement between the parties." L. 2014, c. 42, § 2. See Quinn v. Quinn, 225 N.J. 34, 51 n.3 (2016) (noting because the 2014 amendments were enacted after the marital settlement agreement was executed, they did not govern and the terms of the agreement applied).

3

Judge Butehorn disagreed, noting the parties agreed only that "any review would be 'as provided for' under the new law." The judge found that as the 2014 amendments did not provide any mechanism or authority for review of a marital settlement agreement incorporated into a judgment of divorce before the new law's effective date, "there is no authority under that new law for the court to order defendant's requested outcome" of reducing the length of the alimony term.

The judge further found defendant was not entitled to "a trial on the issue of alimony" because "[t]he statute does not provide a party with the right to seek a new decision on what the initial alimony obligation should have been." Noting courts are not free to create a new or better agreement for the parties than the one they negotiated, Commc'ns Workers, Local 1087 v. Monmouth Cty. Bd. of Soc. Servs., 96 N.J. 442, 452 (1984), the judge found defendant's interpretation of the parties' agreement "would negate the overall settlement as it would remove the entirety of an essential term [alimony] within any matrimonial settlement agreement." Specifically, the judge found defendant's interpretation would "necessitate a finding the parties intended to settle their case, including the issue of alimony, yet also intended all aspects of

4

alimony to potentially be subject of a future trial limited to the issue of alimony."

Finally, the judge noted the parties' agreement provides that alimony will terminate on defendant "obtaining an age where he is entitled to full retirement benefits under social security." Under current law, defendant will reach full retirement age of sixty-seven in April 2032, meaning the parties agreed to a maximum alimony term of eighteen years and five months in their marital settlement agreement. The judge found the parties' reservation of the right "to seek a review of [their negotiated] alimony provision <u>as provided for under the terms of the new law</u>," did not entitle defendant to reduce the alimony term by ten months under "the terms of the new law" or any reasonable interpretation of the parties' agreement. <u>See</u> <u>Dworkin v. Dworkin</u>, 217 N.J. Super. 518, 525 (App. Div. 1987) (holding the applicant "has the threshold burden to establish a prima facie case to obtain a hearing on a motion for relief from the terms of an agreement").

Defendant appeals, reprising the arguments he made to the trial court as to the construction of the parties' agreement and, alternatively, the need for a plenary hearing regarding the parties' "true intent" as to the provision

5

permitting either party to seek review of the alimony provision as provided under the terms of the new law.

We reject those arguments as without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).  Defendant's position reduces to the contention that the parties agreed to be bound by the substantive provisions of the new law, but not by its procedural requirements.  As no fair reading of the parties' agreement could support such an interpretation, we affirm, essentially for the reasons expressed by Judge Butehorn in his thoughtful and thorough written statement of reasons accompanying the order of February 8, 2018.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION